## ISAAC WARE V. THE STATE.

### No. 5636. Decided January 21, 1920.

**1.—Assault to Murder—Aggravated Assault—Charge of Court—Insufficiency of the Evidence.**

Where, upon trial of assault with intent to murder and a conviction of aggravated assault, the same was against both the charge of the court and the evidence in the case, the judgment must be reversed and the cause remanded.

**2.—Same—Presumption of Law—Intent to Kill—Deadly Weapon.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the evidence showed that the injured party not only struck the defendant on the head with a deadly weapon before the latter ever drew his pistol, but declared that he intended to kill or seriously injure the defendant which all the facts corroborated, and the court charged on the presumption of the law in such cases, but the jury nevertheless convicted the defendant, the same was reversible error, as the verdict was not responsive to the charge of the court or the facts in the case.

Appeal from the District Court of Red River. Tried below before the Hon. Ben. H. Denton, judge.

Appeal from a conviction of aggravated assault; penalty, a fine of $500, and thirty days confinement in the county jail.

The opinion states the case.

*Sturgeon, Blackburn, & Sturgeon,* for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was indicted in the District Court of Red River County, Texas, for assault to murder, and upon his trial was convicted of an aggravated assault, and his punishment fixed at thirty days in jail and a fine of $500.

The verdict is against both the charge of the trial court and the evidence in the case. The court's charge contained the following language:

"—If the person whom the defendant is being prosecuted for making an assault upon, at the time was using or attempting to use a weapon calculated to inflict death, or serious bodily injury, it is to be presumed that he intended to inflict death or serious bodily injury.

"12. Now if you believe from the evidence that the defendant assaulted John Lawson, at the time and place alleged, but that said Lawson had made, or was making an unlawful assault upon the defendant with a stick or handle, or, had done, or was doing, some act or acts, which either alone or together with accompanying

words of said Lawson (if any) produced in the defendant's mind, as viewed from his standpoint a reasonable apprehension of death, or serious bodily injury at the hands of said Lawson, and that the defendant committed such assault to protect himself from such danger, or apparent danger, the said assault was in justifiable self-defense, and if you so find, or if you have a reasonable doubt as to whether said assault was in justifiable self-defense or not, you will find the defendant not guilty.''

The testimony of the prosecuting witness, John Lawson, after stating that there was some trouble between appellant and a white boy, was as follows:

''I guess I was about thirty feet from them when they first attracted my attention, and I went slowly to them. I was not thinking about the nigger jumping on the boy at the start; I just saw some peculiar way he doubled up his fist and I went and asked him what he meant by it. I got the handle off from the wagon just after he turned around and told me, 'Yes, By God, he did aim to get on him,' and he would have got on me too, looked like he would, and then is when I got the handle. When I got it and struck him he was paying no attention to the boy, he did not have time to pay any attention to the boy. When I got the handle and struck him he was not trying to hit the boy, he was trying to hit me. I just says, 'why you black son-of-a-bitch I will just kill you.' He told me that he did intend to jump on the boy and cocked his fist on me, and I says, 'yes, you black son-of-a-bitch, I will just kill you,' and that is what I intended to do too. Just at that time he was paying no attention to the white boy, but just a second before he was; he had just turned on me. I pulled him round; I just put my hand on his shoulder and turned him around and asked him did he mean to hit that boy. When I hit him with the stick he was not trying to hit the boy. I aimed to hit him and knock him out of the way, he would have been on me if I had not.

''It was a pretty good sized stick I got; it was big enough to kill him with; it was plenty big. It was thirty-three inches long; that is the length we cut them, and would weigh six lbs, they weigh about seventy-five lbs to the dozen. I intended to use it in both hands, but I was so close and he knocked this lick off and I might not have had it in but one hand, but I intended to use both. I aimed to hit him on the head and I kind of knocked his hat off and he threw up his left arm to ward off the lick, but I hit him by the side of the head and he just stepped back a few feet—we were as close as from here to there; we were right together. When I hit him he went backwards just a little. I did not knock him back, did not hit him hard enough, got the lick knocked off, and I stepped back like to get a lick in and he drawed that gun out and I saw I had to hit him again and I tried to hit him, but he shot before I could ever hit him again. I was trying to hit him, to knock his

gun up and hit him both. When he shot I still had the stick in my hand and would have hit him if I had got down to him. I was in a place where I could not swing it. It was up against the wagon. My stick just kind of dropped over, when the ball went through my hand why it paralyzed them fingers and the big end was the heaviest and it dropped down, but I still held on to the other end and I reached over this way to get it with the other hand and that is when he shot me through here. The first shot he missed me, it went over my shoulder, that was before I tried to hit him the second time and then the second time is when I was trying to hit him he shot me through the stick and knocked it out of my hand. The first shot was immediately after I hit him the first time, and the second shot I had the stick drawn in my hand, and the third shot I was reaching for the stick with my well hand. I weigh on an average about 180 lbs.''

From the testimony of the boy with whom the preliminary trouble occurred, it appears that appellant had backed his wagon closer to the wagon of said boy than he thought proper, and he ordered him to move it away, and called him a 'son-of-a-bitch' just before Lawson took part in the affair. This boy testified as follows:

''Mr. Lawson just stepped up and asked the nigger if he was fixing to hit me, and the nigger said 'yes, by God,' he was, and Mr. Lawson said, 'You black son-of-a-bitch, I will just kill you now,' and he made a lick at the nigger . . . Made the lick with both hands. Had hold of the little end of the handle with both hands. . . . He hit him on the side of the head . . . He (the negro) went backward, and Mr. Lawson started to hit him again, He did not hit him because . . . the nigger shot him in the hand. I guess that was all that kept him from hitting him the second time. He, Lawson, says 'I will kill him.' ''

Turning to the court's charge, as before quoted, we see that the jury were instructed that if the weapon used be one calculated to inflict death or serious bodily injury, then the law presumes such to be the intent of the party using the same. Looking to Lawson's own testimony, as quoted, we see that the spade handle with which he struck the negro, was a weapon calculated to produce death or serious bodily injury. He said: ''It was a pretty good sized stick I got. It was big enough to kill him with. It was plenty big.'' So we have here the absolute presumption of the law that when Lawson struck appellant on the head, before appellant ever drew his pistol, he intended to kill or seriously injure appellant. But we are not left to this legal presumption alone, for Lawson swore that he did intend to kill appellant. Not only did Lawson strike appellant on the head with a stick big enough to kill him, before appellant attempted to get his pistol, but he was in the act of striking a second blow with the same stick, when the negro drew his pistol and fired at the hand that held the stick that was apparently

coming toward his head the second time. When appellant fired, the bullet struck the hand of Lawson, which held the stick, and Lawson then reached for the stick with his other hand, and appellant fired again, striking Lawson somewhere about the body; and even after that, it appears from Lawson's testimony further that he tried to get the other men at the plant to kill the appellant. We do not deem it necessary to discuss the well known and settled principles of self-defense, further than to say that the trial court instructed the jury correctly. The jury's verdict was not responsive to the charge of the court, but was clearly against the same and the testimony, as must be apparent to any one who reads the same, as quoted above. It would be useless for us to speculate as to whether or not the unfortunate fact of racial difference, or the remarks of the prosecutor, or what may have been the cause that led to this result, but we are firmly of the opinion that the verdict and the judgment are not supported by the evidence, but are against the same; and the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*